United States Court of Appeals for the 11th Circuit Hear ye, hear ye, hear ye The United States Court of Appeals for the 11th Circuit is now open according to law God save the United States and this Honorable Court Thank you Ms. Tisa and good morning to everyone on the line We wish that we were together with you all in Miami but We've been doing this a little while now and it works pretty well My name is Beverly Martin and with me on the line is Judge Newsome and Judge Keith Watkins from Alabama Judge Newsome and I really appreciate Judge Watkins sitting with us this week We've assigned him a lot of work so we're very appreciative and I haven't had the privilege of sitting with you in my time on the court, Judge Watkins so I'm excited about the week Likewise and thank you for the opportunity Alright Judge Newsome, you're with us, you're so quiet this morning I am here ready, go on Alright, well with that Ms. Tisa is going to call out I think when we get to the two minute mark, is that right? Yes ma'am Okay, and I think we have promised you all three minutes of uninterrupted argument to begin So with that we'll get underway with the case of the United States vs. Gertie Muho If I'm pronouncing the name correctly Good morning to the court, I'm Richard Clue arguing for Appellant Gertie Muho This case involves numerous financial transactions arising from a complicated business relationship between the defendant and his previous employer, Fletcher Asset Management Muho's defense to charges of obtaining Fletcher related funds was that he lacked criminal intent to defraud He was instead trying to investigate Fletcher's wrongdoing and recover losses for investors in funds managed by Fletcher Before trial, Muho underwent a competency exam at the government's request and with defense counsel's agreement He was allowed thereafter to represent himself in pretrial proceedings and trial The issues are, the trial court's failure to curtail Muho's self-representation was improper given noted lapses in Muho's behavior and understanding and his vacillation regarding whether he wished to continue representing himself Another issue, the trial court's denial of subpoena requests for two witnesses needed to support Muho's defense of lack of fraudulent intent was an abuse of discretion that deprived Muho of fundamental Fifth and Sixth Amendment trial rights Muho's sentence and guideline range was also improperly increased on the theory that he derived more than $1 million from financial institutions as a result of the offense, based on a wire transfer of funds from a corporation's investment account where the bank was not the source or owner of the corporation's transferred funds and the bank was not a financial loss victim of the offense Finally, the 22-year sentence was excessive, given that Muho was a first-time offender who was under the influence of and addicted to strong prescription medicine distorting his thinking throughout the offense He suffered from multiple disorders His mental state during the offenses was questionable, according to two trial witnesses His disturbing behavior before trial warranted a competency examination and his offenses were non-violent, resulting in an actual loss amount between $1 and $2 million, according to the restitution order that is comparatively disproportionate to the extraordinarily lengthy 22-year sentence for a first offense I intend to focus today on the Rule 17b subpoena issue and the guideline error First, the district court's denial of subpoenas for two witnesses was an abuse of discretion that deprived Muho of his constitutional rights to compulsory process and protection against unreasonable discrimination based on his indigency When the court declared him indigent, the requests were made about a month prior to trial and were timely Muho set forth facts showing the testimony was needed for his mens rea defense and that he lacked fraudulent intent The government failed to oppose the request and the court offered no reason for the denial This is Judge Newsom. Can I just ask you a quick question about the 17b issue? I think I at least understand your argument with respect to the doctor I'm not sure I agree with it in light of 704b, but we can talk about that But just to set the table, I don't think I even understand what the Delaware Supreme Court Justice was supposed to testify to The principal importance of his testimony was to show that Muho was in fact contesting against other forces in this entity, this Fletcher entity that were actually the wrongdoers and that the hearing before the judge would manifest the judge's findings or impressions with regard to what was occurring in this hearing because there was no transcript available And it could be that I just haven't read the pertinent pieces of the record but I couldn't get much context from Muho's brief or from the request How is it that the Delaware Supreme Court Justice came into this information? How did he develop these impressions? It just seems like we didn't give the district court much to go on There are certainly some limitations He was a pro se litigant and it wasn't perfect in his expression But I believe that when you look at the request docket entry 211 pages 2-3 that the justice in Delaware would have been able to explain that other forces doing wrong were actually doing wrong and that this then helps to explain how Muho gets it into his head that he becomes a corporate white knight out to save the company that the case that we cited as supplemental authority yesterday the case from the 5th circuit it shows that this type of other type of investigatory evidence that even though the jury is not required to accept it and that's important can help to show the context of the offense and the possibility that there are other people that were actually the wrongdoers involved which is relevant again to if not the actual fact of what occurred the defendant's intent The issue with regard to the psychiatrist I think is perhaps clear because he treated Mr. Muho for 3 years 4 years I guess from 2012 to 2015 throughout the offense period and his testimony was sought specifically to show Muho's state of mind that his intent was to save the hedge funds at issue from misuse But isn't that the one thing under 704B that the doctor can't say? Under I think this court's Cameron decision I think is possibly the most important decision on this issue What people are afraid what the rule I think is designed to keep a psychiatrist from saying is that the defendant's brain works in a way that it doesn't function correctly and so you cannot convict him of a crime because he doesn't have the capacity to enter into these types of mental states But what a psychiatrist can state under Cameron is the observations of what the defendant is doing The example I would give is suppose that the defendant is charged with grinding up dog biscuits to make some kind of explosive or narcotic and he wishes to introduce testimony from the psychiatrist who's been treating him for 4 years that he thinks he's a dog and he loves dog biscuits I think most people would agree that the psychiatrist should be admitted to give the opinion that this is why he's out there trying to give dog biscuits and I think that's why this particular one this case is a classic example of a permissible use of psychiatric testimony He's not saying he's incapable of committing a drug, fraud or other type of offense He's not saying that he lacks that type of political control or other things What he's saying is that by treating him I can see I can see what he is about and what he is manifesting and how it is a mental... the fact that it is a mental state that is off the norm is so important when the government is arguing that logic and common sense as a defendant wouldn't be out doing these things The psychiatrist is there to explain why the fellow is not using logic and common sense since he's following his belief that or could be following his belief that he is a corporate white knight Go ahead I was just going to say that the Cameron case which fights 7th Circuit authority that the psychiatrist specifically says that the psychiatric evidence indicates specific intent is admissible when it focuses on the defendant's specific state of mind at the time of the charge Counsel, two minutes, two minutes, counsel I would like to touch on the guideline issue as to how the... the court has not found that where... this court has not yet found that when the bank suffers no loss or there is no indication that the bank was going to suffer a loss or had to recover a loss that this guideline should apply The language of the guideline which is now 2B1B17A refers to the actual occurrence of a million dollar loss by a financial institution as a result of the offense and the issue is when... that I think is resolved by the language of the statute as well as by the two cases the Stinson and the Huggins case that we've cited This is really an ends not a means type of statute The means of using the bank to get to the money is not what this guideline is about because it's about results and it's about actual receipts of money that derive from a bank rather than from another entity Can I ask you just a quick question about this? I think this is an intriguing issue But derived from... in the context of the guideline why is derived from necessarily sort of... why do we necessarily trace it back to the ultimate source of the money here being the third party and not HSBC If HSBC was the party here that was tricked why isn't the money in an ordinary understanding of the phrase derived from, derived from the bank? Well, the... I think that a couple of reasons One, it would have been much easier I think to write a guideline that would have been as expansive as the government wants which is to say that anyone who uses a bank in any way is part of an offense to collect money  Counselor, your time is expired Your time is over The question of derivation as interpreted at least by the Third Circuit and the Second Circuit they treat it more as from whence the funds actually derived in the sense of whose funds are they And I think that's really a more appropriate way of looking at it because the protection of the financial institution at issue is one of results in this case It's when did something happen where the financial institution gave up a million dollars of its funds and so it lost money or it potentially lost money And as the indictment I think it's important alleged in this case Documentary 170 pages 8 to 9 The indictment specifically alleged that this was the corporation's money the corporation owned the funds And I also want to note that this was not a count of conviction so that there was no further evidence of it, no further evidence at sentencing that would show anything other than that allegation of the indictment This is Beverly Martin I just wanted to follow up on that I was trying to run that down because the Third Circuit and the Second Circuit seem to make some distinctions based on the facts which I just didn't see the record reflect anything about this money and whether the bank suffered a loss Am I missing something in the record that would develop that fact for me No, there was nothing of that nature We do not believe that a remand is necessary But if the court does feel that a remand that would be our second request Thank you Mr. Maskin, are you with us? Good morning, your honors I apologize, I was just unmuted May it please the court, Dan Maskin on behalf of the United States The District Court presided over this case with utmost consideration and regard for Mr. Mujo's constitutional rights, particularly his right to present an effective defense Because the District Court ensured Mr. Mujo a fair trial and properly sentenced him this court should affirm Mr. Mujo's convictions and sentence I'll begin with the Rule 17B subpoena issue and feel free to interrupt me with questions even during my initial two minutes if you have them your honors I'd like to start by highlighting the procedural posture in which the issue arose in District Court Consistent with the procedures set forth in Rule 17B the District Court at Docket Entry 206 ordered Mr. Mujo to file his motion for 17B subpoenas ex parte and the reason that rule exists generally and was to impose an extra undue burden on defendants, but rather to give the defendant a chance to explain to the District Court his theory of defense, which is to say, in his view, what the case is about, what his defenses are, what facts support those defenses and from which witnesses they'll come, and how the witness's testimony relates back to those defenses, and Mr. Mujo didn't do that here As Judge Newsom pointed out, Mr. Mujo said Justice Vaughn would testify about contents of an unrecorded telephonic conference in a separate litigation regarding the hedge funds at issue but he never proffered he, Mr. Mujo, never proffered what was explained or what was said at this conference, who was to make this conference happen and so he fell far short of establishing his initial burden to show necessity for the requested testimony The same infirmity applies with the proffer as to Dr. Schellenberger, but the larger issue as was pointed out with respect to the psychiatrist is with respect to Rule 704b and as has been established by cases like Cameron and others psychiatric testimony has a tendency often times to confuse or distract the jury and a psychiatrist can't ordinarily testify absent some sort of diminished capacity defense, which we didn't have here as to a defendant's mens rea as to a particular account and another argument that I would point out is that the proposed testimony from both witnesses would have been cumulative All eight of the requested subpoenas as proffered by Mr. Mujo would have related to his mens rea or his intent to defraud, which are essentially the same thing and so having reviewed all eight of those proposed witnesses together the district court reasonably could have concluded that six of those eight would have sufficed to present an effective defense and finally really your honors don't even need to reach the issue because any error here was harmless in view of the weight of the evidence against Mr. Mujo and the fact that Mr. Mujo was able to adduce in his defense case through Agent Hattier the fact that Mr. Mujo did reach out to him early on to report what he purportedly perceived to be malfeasance or misconduct on the part of the hedge fund and Mr. Mujo's own testimony to that effect, which again the jury was free to reject which it did I'm happy to address any questions on that issue. If there are none I'll move on to the enhancement The gross receipts enhancement is just as notable for what it does say as for what it doesn't say The guideline at issue doesn't apply to gross receipts originating from a financial institution or even gross receipts owned by a financial institution. Instead it applies to by its own terms gross receipts derived from a financial institution. Now Mr. Mujo's argument here in essence is that the two plus million dollars at issue here derived not from the financial institution but from the account holder and the Supreme Court rejected an almost identical argument in the context of the bank fraud statute in Shaw There the defendant like Mr. Mujo here stole money on deposit with a financial institution and was charged with bank fraud. The defendant argues that he couldn't be charged with bank fraud because it wasn't the bank that was defrauded. The proceeds at issue didn't belong to the bank. They belonged to the account holder. The Supreme Court unanimously rejected that argument. It pointed out that banks have a property interest in funds that they keep on deposit Now the nature of that property interest might differ from case to case. Oftentimes as the court pointed out it's an ownership interest. Sometimes it's a bailee interest. But at the end of the day, banks always have a property interest in funds that they keep on deposit. This is Josh Newsom. Can I ask you a quick question about that? Was Shaw sort of presupposing the application of U.S. banking law? And if so, what do we know about HSBC Monaco? Well, we know that it is a financial institution as contemplated under the guideline. That issue hasn't been challenged. Certainly we're applying U.S. law in this case. And so the Supreme Court spoke in broad terms in Shaw. It didn't analyze the particular governing contracts of the particular account at issue in the case. You'd have two potential black holes, I guess. One is the nature of the contract at issue. I don't guess we know anything about the deposit agreement here. But separately, when the Supreme Court was talking about banks having a property interest or a bailee interest, I assume that the court was sort of assuming some kind of restatement of the law kind of background about the way that banks in the U.S. operate. And I could be completely off-base about this. I just want to make sure that to those concepts, can we simply just pick them up and plop them down onto HSBC Monaco? Maybe we can. Again, the Supreme Court, to the best of my recollection and knowledge, hasn't delineated any distinction in that regard. So I see no reason why Your Honor shouldn't. And in our view, Shaw resolved this case and consistent with what the Second Circuit deemed to be the purpose of the guideline, which is to penalize individuals from putting banks at risk or at jeopardy by stealing funds. That's exactly what we have here in Mr. Mujo's case. I'm sorry. Let me ask you one other question, and then I'll shut up and let you talk, or let my colleagues ask questions. So derived from, is your position that the funds here were derived from the bank and not from the third party, or that they were potentially derived both from the bank and the third party? Our position is that they were derived from the bank. Again, consistent with Shaw, banks have a property interest in those funds. It might be that the third party had an interest in those funds. It might be a depositor can call up its deposits with some degree of some amount of notice. In the general course of things, depositors do have a right to money on deposit, and presumably that would have been true in Shaw as well. But again, consistent with the Supreme Court's holding in that case, the funds at issue here did derive from HSBC Monaco, which is a bank. They might also have derived from, in some sense, the depositor, but they derive from the bank in some sort of approximate way. That's exactly right. This is Beverly Martin. Just to be sure I understand your position. In the government's view, if the money comes out of a bank account, this enhancement applies, period. You don't need to know anything about the relationship between the depositor and the bank or whether the bank suffered any loss or anything. No facts in that regard. It's just the guideline enhancement applies. Yes, Your Honor. With the caveat that stealing money from a bank does subject, to the extent that the issue is pertinent to Your Honor's analysis, stealing money from a bank does subject a bank to as Second Circuit pointed out, banks can be held civilly liable for negligently or fraudulently transferring money. Of course, but my point is, what you're saying is, whether they were or not, we don't need to know. The guideline applies anyway. That's right. That's our position, Your Honor. Just so I understand now, do you dispute the result in Huggins? There, the money came out of the bank, but Huggins said, well, look, this is a strange scenario because the fraudster didn't trick the bank. He tricked some third-party depositor, and so he's really just taking money out of his own account. So even though there the money came out of the bank, in response to Judge Martin's question, do you mean that you think that the enhancement should have applied even on those unique facts, or does the bank have to be tricked in some way? That's right, Your Honor. The bank does need to be tricked in some way, and Huggins is a unique case because, as the Second Circuit pointed out there, the defendant really was in essence stealing from himself because although the money was fraudulently obtained, the money was in his bank account. Okay. Got it. With that, I'm happy to address any other questions that Your Honors have. If there are none, we ask that Your Honors affirm the District Court in all respects. Thank you. Thank you very much. Richard Glue again for Appellant Mujo. I wanted to address first the question of harmlessness as to the 17B issue. It's important, I think, to look at the closing argument of the government, and particularly the rebuttal closing argument and how it began in docket entry 317 at 184 through 186, and that basically came down to a page-and-a-half argument that was other than what he has said, there's absolutely no evidence in this case that any of that, i.e., what he claimed he was intending to do, be a white knight, is true. It's just nonsense. It just is. So this is one of the clearest cases in which the denial of access to the testimony was, at least in the government's view, critically important, and they used it to great advantage. Whether a jury would have believed that the defense, I think, is not really the key point of harmlessness. The point is whether the...because we haven't heard the testimony, and I think a credible psychiatrist, credibly saying that for four years he's treating this man, and it's unquestionably his opinion that the man is consumed with a belief that what he is doing out there is to save these investors, that the jury would have found that relevant to all or most of the counts, and one juror easily could have made that the basis of a finding of a reasonable doubt. The other arguments on the 17b issue, just quickly, because I do want to get to the sentencing question, is that routinely psychiatric evidence is excluded. I think that's why it's important to look closely at this, microscopically at this, because routinely you don't have this issue. I've never... I've been practicing 40 years or so, I've never seen this issue come up in this context. This is unusual and credible in the sense of, given his mental problems, a case of which the psychiatrist's testimony was clearly relevant. Again, the harmlessness response that I gave also responds to the government's cumulative...cumulativity argument. It clearly wasn't cumulative, as the government argued in rebuttal. The other point on the 17b is the government says that the intricacies of a 17b analysis require a greater explication of defense theory. But again, we're dealing with a pro se litigant here, and ordinarily this court does not apply these sorts of fine distinctions when a pro se litigant pretty much makes it clear where he's going. With regard to the government, one point I wanted to agree with, the government says the guideline language does not say originated in a bank, a financial institution. And I agree, it doesn't say that. And I think that's important, because there are so many ways that the guideline could have been written to say that funds that are held, or over which the bank has control, or over which the bank is an authorized agent of the owner. There are 10 million ways that the guideline could have been written to do anything other than what it appears to me to do, which is to protect financial institutions from loss. Now, again, it's not only factually that there's complete absence of showing of any risk of loss of any kind, of any loss of any kind, the indictment specifically makes only one allegation with regard to these funds, and that is that they were owned by the corporation. The questions regarding Shaw, I think they're important as to what extent Shaw applies to foreign banking. I think that's a very important issue, and I think that it's equally important that Shaw is dealing with the question of a fraudulent scheme. Holding that a scheme can be expensive is very different from a guideline that is specifically focused on particular loss-based findings in order to enhance, substantially enhance. This is a guideline enhancement that increased the sentence approximately four years as I read the guidelines. So before that is applied, Shaw, and I don't think can be, no matter how Shaw is read, shouldn't be used when dealing with what a scheme implies to whether a loss and harm to a bank issue should also result in such a large expansion of the sentence. Is there any set of circumstances under which a bank could transfer this much money from one account holder's account to another's without risking liability? I think EFTs, for example, you know, banks, funds move through banks all the time, and they're all, of course, everything is all premised on the legitimacy of it. The question of whether, again, it's an uncharged account. There's no conviction here. There's no findings with regard to guilt on this in the record. But let's assume the finding of guilt is that he basically exercised improper, exceeded his authority as a director of Soundview, the company involved, which he was, on the board of directors. Now the question is, was he properly removed from that company? Was he not properly removed? Did he properly merge it with another company? Did he not properly merge it with another company? Those are all companies' issues that really are of the variety which do not in any way create liability for the bank, or at least do not create a situation where the bank would have been exposed to liability, particularly on this record that we know about it. And so I think that if the court is concerned about the magnitude of a very great rise in punishment for a guideline that is designed to protect a bank from actual loss on this record, it simply was not shown by the government. Thank you, Mr. Kluge. And we'll take that case under consideration.